UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-2693(DSD/JJG)


Florists' Mutual Insurance Co.,

                    Plaintiff,

v.                                                     **ORDER**

Wagners Greenhouses, Inc.,

                    Defendant.


            Thomas E. Peterson, Esq. and Peterson & Hektner, 7831
            Glenroy Road, Suite 145, Minneapolis, MN 55439, counsel
            for plaintiff.

            Gary J. Haugen, Esq., Margaret S. Brownell, Esq. and
            Maslon, Edelman, Borman & Brand, 90 South Seventh Street,
            Suite 3300, Minneapolis, MN 55402, counsel for defendant.



        This matter is before the court on plaintiff's motion for
summary judgment and defendant's motion for partial summary
judgment. Based upon a review of the file, record and proceedings
herein, and for the reasons stated, the court grants plaintiff's
motion, denies defendant's motion and dismisses the action.



                              **BACKGROUND**

        This is an insurance coverage dispute between plaintiff
insurer Florists' Mutual Insurance Co. ("Florists' Mutual") and
defendant insured Wagner's Greenhouses, Inc. ("WGI"). WGI is a
commercial producer of young plants, seedlings and finished
products of annuals and perennials. In 2005, WGI had a business

relationship with S&G Flowers, Inc./Syngenta Seeds ("Syngenta"), in which Syngenta sold seeds to WGI that WGI grew into pansy plugs – young pansy plants.  WGI then sold the plugs back to Syngenta, which acted as a broker and resold the plugs to its own customers. WGI, however, delivered the plugs directly from its greenhouses to Syngenta's customers.  Syngenta's customers then transplanted the plugs into new containers and soil and grew the plugs until they were ready to be sold through garden centers or landscapers.

In fall 2005, Syngenta's customers noticed streaking, distortion and mottling of some of the pansies two to three weeks after they transplanted the plugs.  The problem was later determined to be mottled pansy syndrome ("MPS").  MPS rendered the pansies unmarketable and Syngenta's customers incurred damages as a result.  The cause of MPS is unknown, and there is no evidence in the record indicating that any action or inaction by WGI caused the MPS.

To avoid litigation and preserve its business relationships, Syngenta settled with the thirty-five customers affected by MPS for more than $900,000.  On October 12, 2006, Syngenta filed suit against WGI in Illinois state court ("Syngenta litigation") to recover those losses.  The complaint asserted claims for breach of an express warranty, breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose and declaratory judgment.  After an initial

refusal, Florists' Mutual has been defending WGI in the Syngenta litigation under a complete reservation of rights since fall 2006. As of December 7, 2007, the date of the hearing on these motions, cross-motions for summary judgment were pending in the Syngenta litigation.

Florists' Mutual brought this federal diversity action on June 23, 2006, seeking a declaration that it has no duty to defend or indemnify WGI with respect to the Syngenta litigation. WGI counter-claimed on November 14, 2006, seeking a declaration that Florists' Mutual has a duty to defend and indemnify WGI and alleging three claims for breach of contract and a claim for breach of an implied covenant of good faith and fair dealing. Florists' Mutual moved for summary judgment on September 18, 2007. WGI moved for partial summary judgment on October 30, 2007, on its duty to defend claim.

## DISCUSSION

### I.   Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  A fact is material when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  Id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in the light most favorable to the non-moving party.  Id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  The interpretation of an insurance policy - including whether an insurer has a duty to defend or indemnify - and the determination of whether policy language is ambiguous present questions of law that the court may properly decide on summary judgment.  See Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001); Wakefield Pork, Inc. v. RAM Mut. Ins. Co., 731 N.W.2d 154, 159 (Minn. Ct. App. 2007); Reinsurance Ass'n of Minn. v. Timmer, 641 N.W.2d 302, 307 (Minn. Ct. App. 2002).

## II.  Insurance Coverage

WGI argues that under its commercial general liability ("CGL") insurance policy ("Policy") Florists' Mutual has a duty to defend WGI and that factual issues remain as to Florists' Mutual's duty to indemnify WGI.  Florists' Mutual argues that the Policy excludes such coverage.

4

Under Minnesota law, a court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 880 (Minn. 2002). Unambiguous language is given its plain and ordinary meaning. Id. Ambiguous language is construed against the drafter and in favor of the insured. Nathe Bros. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Language is ambiguous if "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). However, a court "guard[s] against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006).

An insurer has a duty to defend an insured "when any part of the claim against the insured is arguably within the scope of protection afforded by the policy." Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 407-08 (Minn. 1996). A court generally compares the terms of the policy with the complaint to determine whether an insurer has a duty to defend. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 313 (Minn. 1995) (citation omitted). In addition, a court may consider "facts outside the complaint to determine whether coverage exists." Haarstad v. Graff, 517 N.W.2d 582, 584 (Minn. 1994). However, there is no duty to defend if coverage is excluded. Wakefield Pork, Inc., 731 N.W.2d at 159

5

(citing <u>Bobich v. Oja</u>, 104 N.W.2d 19, 24 (Minn. 1960)).  Moreover, the duty to defend is broader than the duty to indemnify.  <u>Wooddale Builders, Inc. V. Md. Cas. Co.</u>, 722 N.W.2d 283, 302 (Minn. 2006) (citations omitted).  Therefore, if there is no duty to defend under an insurance policy, there is also no duty to indemnify.

The insured has the burden to establish a prima facie case of coverage.  <u>SCSC Corp.</u>, 536 N.W.2d at 313.  If coverage is established, the burden shifts to the insurer to prove the applicability of a policy exclusion.  <u>Id.</u>  Exclusions in an insurance policy are construed strictly against the insurer, in light of the insured's expectations.  <u>Thommes</u>, 641 N.W.2d at 880. Exclusions, however, are given the same weight as any other part of an insurance contract in determining the policy's scope.  <u>Id.</u>

Here, assuming that WGI could satisfy its initial burden, Florists' Mutual argues that it is not required to defend or indemnify WGI in the Syngenta litigation because of a "business risk" exclusion ("Your Product Exclusion").[1]  Specifically, the Policy excludes from coverage "'[p]roperty damage' to 'your product' arising out of it or any part of it."  The Policy further provides that:

---

[1] Florists' Mutual also argues that coverage is excluded by a separate "Growers and Merchants Errors, Omissions and Misdelivery" exclusion.  There is no need to address this exclusion, however, because the court determines that the Your Product Exclusion excludes coverage here.

'Your product' means:

a.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)  You;
(2)  Others trading under your name; or
(3)  A person or organization whose business or assets you have acquired; and

b.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

'Your product' includes:

a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and

b.   The providing of or failure to provide warnings or instructions.

This type of exclusion generally bars coverage for failure of the insured's product and any damages incidental to the product's failure, including "the cost of repairs necessitated by the defective product." Bright Wood Corp. v. Bankers Standard Ins. Co., 665 N.W.2d 544, 548 (Minn. Ct. App. 2003) (citing St. Paul Fire & Marine Ins. Co. v. Futura Coatings, Inc., 993 F. Supp. 1258, 1264 (D. Minn. 1998)); see also Carpole's Inc. v. Ins. Co. of N. Am., 544 F. Supp. 6, 7-8 (D. Minn. 1982).

For example, the insurance policies in Bright Wood excluded coverage from "damage to the insured's product 'arising out of it or any part of it.'" Bright Wood, 665 N.W.2d at 547. In that case, the insured - Bright Wood - contracted with a manufacturer to

7

provide wood components for incorporation into completed windows. Id. at 546. Bright Wood failed to treat the components with a wood preservative, causing the components in certain finished windows to rot. Id. Because the manufacturer could not reliably determine which windows had not been treated, it repaired or replaced all windows manufactured during the relevant time period. Id. at 546-47. The repairs required the manufacturer to remove other components, occasionally resulting in damage to those non-Bright Wood components. Id. at 547. After settling with the manufacturer, Bright Wood sought a declaration that its CGL policies covered the settlement. Id. The court, however, held that the "your products" exclusions barred coverage, reasoning that all of the damages - including damage to the non-Bright Wood products - were incidental and thus excluded from coverage. Id. at 548-49.

In this case, the court looks to Syngenta's alleged damages to determine whether Florists' Mutual has a duty to defend or indemnify WGI. The court, however, must determine the character of those damages by considering the damages Syngenta's settlement payments covered. The dispositive issue is whether Syngenta's payments covered something more than the direct and incidental damages resulting from the MPS-infected plugs. If the settlement payments only covered direct and incidental damages, coverage is excluded.

WGI sold the infected pansy plugs to Syngenta for approximately $183,000. In the Syngenta litigation, Syngenta indicated that the infected plugs gave rise to $1,467,654 in claims by its customers but that it had settled all but $39,461 of those potential claims for $904,869. Syngenta, however, did not specify in its complaint the type of damages its customers suffered that created the nearly $1,300,000 discrepancy between its customers' potential claims and the cost of the plugs. Documents produced during discovery in the Syngenta litigation, however, shed light on the damages suffered by Syngenta's customers. Those documents show that Syngenta's settlement payments applied to the actual costs of the infected pansy plugs as well as labor costs, disposal fees and loss of earnings – all as a result of the defective plugs. Moreover, some of the payments covered "re-working of not only the plugs claimed, but the total number of flats affected" by the MPS-infected plugs. WGI argues that the damages associated with reworking the noninfected plugs on the flats with infected plugs do not constitute incidental damages and therefore Florists' Mutual has a duty to defend. However, the court sees no meaningful distinction between this case and <u>Bright Wood</u>.

Even though Syngenta's customers had to rework flats containing some noninfected plugs, the damages associated with the reworking are the equivalent of costs incurred as a result of the

need to repair the flats because of WGI's faulty product.[2]
Therefore, all of the damages covered by Syngenta's settlement
payments - including the costs of reworking the flats - are damages
incidental to the MPS-infected plugs.  Accordingly, the court
determines that the Syngenta litigation is excluded from coverage
by the Your Product Exclusion and that Florists' Mutual has no duty
to defend or indemnify WGI in that litigation.[3]  Moreover, because

_____

[2] Unlike in Bright Wood, there is no evidence here that WGI
was responsible for the faulty product.  The express terms of the
Your Product Exclusion, however, do not require that the faulty
product be caused by action or inaction on behalf of the insured.

[3] The court notes that although coverage of business risks in
a CGL policy is determined not by judicially recognized principles
of insurance law, but rather "by the specific terms of the
contract," Wanzek Construction, Inc. v. Employers Insurance of
Wausau, 679 N.W.2d 322, 327 (Minn. 2004), the business-risk
doctrine supports this conclusion.  See Thommes, 641 N.W.2d at 882
(business risk doctrine is "useful for exploring the fundamental
purpose of CGL insurance.") Specifically, the scope of CGL policies
has been articulated as follows:

 'The risk intended to be insured is the possibility that
 the goods, products or work of the insured, once
 relinquished or completed, will cause bodily injury or
 damage to property other than to the product or completed
 work itself, and for which the insured may be found
 liable.  The insured, as a source of goods or services,
 may be liable as a matter of contract law to make good on
 products or work which is defective or otherwise
 unsuitable because it is lacking in some capacity.  This
 may even extend to an obligation to completely replace or
 rebuild the deficient product or work.  This liability,
 however, is not what the coverages in question are
 designed to protect against.  The coverage is for tort
 liability for physical damage to others and not for
 contractual liability of the insured for economic loss
 because the product or completed work is not that for
 which the damaged person bargained.'

(continued...)

the counts in WGI's counter-claim are predicated on Florists' Mutual's alleged duties to defend and indemnify WGI in the Syngenta litigation, the court sua sponte dismisses WGI's counter-claim.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's motion for summary judgment [Doc. No. 17] is granted.

2.   Defendant's motion for partial summary judgment [Doc. No. 22] is denied.

3.   Defendant's counter-claim is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 23, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court

---

[3](...continued)
Bor-Son Bldg. Corp. v. Employers Commercial Union Ins. Co., 323 N.W.2d 58, 63 (Minn. 1982) (quoting Roger C. Henderson, Insurance Protection for Products Liability and Completed Operations - What Every Lawyer Should Know, 50 Neb. L. Rev. 415 (1971)).
     WGI argues that the business risk doctrine does not support exclusion in this case because Syngenta's customers - third parties - incurred the relevant damages.  Here, however, Syngenta - a direct party - is the relevant damaged party, not Syngenta's third party customers.  The conceptual difficulty arises because the character of Syngenta's damages are determined by the damages suffered by its customers.  Nevertheless, the business risk doctrine supports exclusion.

11